IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GJH-19-96 |
| | * | |
| CHRISTOPHER PAUL HASSON, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******** | | |

**OPPOSITION TO DEFENDANT'S PROPOSED RELEASE CONDITIONS**

The defendant has proposed to be released subject to certain conditions.  *See* ECF No. 29.  The Government continues to oppose the defendant's release under any conditions.[1]  We write now to raise specific objections to the defendant's proposed release conditions.  None of them would meet the Court's goal—stated at the detention hearing on April 25, 2019—of ensuring that someone have "eyes and ears" on the defendant "like nobody's business."  The only way to ensure that goal is met is to keep the defendant detained in the custody of the United States Marshals Service.

Consistent with the Court's guidance on April 25, 2019, the defendant has suggested the designation of a third-party custodian, selected by the Court from a list of five proposed custodians.  None of the proposed custodians are viable options.

First, each custodian is located outside of the State of Maryland.  The defendant has proposed his parents and his brother, all of whom live in Arizona.  But the Court made clear on April 25, 2019, that Arizona was a non-starter.[2]  The other proposed custodians are in Virginia,

---

[1] If the Court determines to release the defendant, the Government will appeal the release order and seek a stay of release pending appeal.

[2] The Court's reasoning was sound and obviates the need to consider logistical and security questions regarding the defendant's flight plans, including which identification the defendant

each at least 190 miles from federal court in Greenbelt, Maryland.  The distance creates logistical difficulties, regarding both travel and monitoring.  Will the custodian personally drive the defendant the three hours from Maryland to Virginia?  Will stops be permitted?  How will Pretrial Services monitor the defendant's location during travel?  What happens if, during the drive, the defendant—a thirty-year service member, at least 5'11, and 180 pounds—attempts to escape or commandeer the car from his mother-in-law (age 72) or his father-in-law (age 78)?

Second, there is no reason to trust the defendant to be truthful and compliant with any custodian.  As the Government stated on April 25, 2019, the defendant hid his criminal misconduct from each of the custodians—including on a visit to his parents in Arizona over the Christmas holidays.

Third, each proposed custodian suffers from individual deficiencies, as discussed below:

**Mother-in-law**

**Father-in-law**

---

would be permitted to have in order to pass through security, whether an airline would even permit the defendant on board, and whether other passengers on the flight would feel safe.

**Parents**

**Brother**

**Wife**



**Property Bond**

The defendant has proposed posting his own property and his parent's home as a property bond. The defendant's North Carolina property currently is lived in by renters and is highly leveraged. As the defendant himself has recognized, posting that property would be an empty gesture, because "if I ran away . . . it would be like 'so what'?" Regarding his parent's home, the

Court should inquire whether the defendant's parents would post their property only if the defendant is released to Arizona or also if he is released to a Virginia location.

## Conclusion

The Government continues to believe that the defendant poses a serious danger and must be detained pending trial. Even if the Court were to consider release conditions, none of the ones proposed by the defendant are acceptable, as none could reasonably assure the safety of any other person or the community, within the meaning of 18 U.S.C. § 3142(e)(1).

Respectfully submitted,

Robert K. Hur
United States Attorney


/s/
Thomas P. Windom
Assistant United States Attorney