UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. GJH-19-0096 |
| CHRISTOPHER PAUL HASSON | * | |

\* \* \* \* \* \* \* \* \* \* \*

## REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT THREE OF THE INDICTMENT ON VOID-FOR-VAGUENESS GROUNDS

On June 24, 2019, Defendant Christopher Paul Hasson filed a motion to dismiss Count Three of the indictment because the statute charged in that count, 18 U.S.C. § 922(g)(3), is unconstitutionally void for vagueness on its face. ECF No. 63. The government responded on August 5, 2019. ECF No. 70 at 13-24. Mr. Hasson now submits this reply.

Contrary to the government's argument, Mr. Hasson may attack § 922(g)(3) on its face regardless of whether the statute covers his own conduct. The Supreme Court's opinion in *Johnson v. United States*, 135 S. Ct. 2551 (2015), as well as subsequent cases from the Fourth Circuit, confirm that facial challenges are available even to defendants whose conduct purportedly falls within a statute's sweep.

On the merits, the Fourth Circuit's elaboration of "unlawful user" leaves people of reasonable intelligence to guess at the term's meaning—as suggested by the Fourth Circuit's recent en banc opinion holding the phrase "habitual drunkard" void for vagueness. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264 (4th Cir. 2019) (en banc).[1] And the two subparts

---

[1] The Fourth Circuit issued its *Manning* opinion on July 16, 2019, after Mr. Hasson filed his motion but before the government filed its response.

1

of § 922(g)(3)'s "addicted to" definition are either circular or plagued by language that courts have recognized as hopelessly vague.

### A. Mr. Hasson May Bring a Facial Vagueness Challenge to § 922(g)(3).

The government acknowledges that in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court "squarely" rejected "the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." 135 S. Ct. at 2561; *see* ECF No. 70 at 14. Nevertheless, the government claims Mr. Hasson may not mount a facial challenge to § 922(g)(3) because his own conduct purportedly falls within the statute's scope. ECF No. 70 at 14-16. This argument ignores the history of the void-for-vagueness doctrine, the holding of *Johnson*, and post-*Johnson* case law.

The leading Supreme Court case in modern void-for-vagueness jurisprudence is *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982). There, the Court wrote that in a facial vagueness challenge, a court may "uphold the challenge only if the [statute] is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Estates*, 455 U.S. at 494-95. In a footnote, the Court explained: "The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. Such a provision simply has *no* core." *Id.* at 495 n.7 (emphasis in original).

Thus *Village of Hoffman Estates* conceived of two principles as being necessarily tied together: (1) someone whose own conduct is prohibited by a statute cannot bring a facial vagueness challenge (the "own conduct" principle), and (2) a statute is facially vague only

2

if it is vague in all of its applications (the "all of its applications" principle). The "all of its applications" principle was "[t]he rationale" for the "own conduct" principle. *Id.* Put differently, a defendant who had, in fact, violated a statute could not challenge it facially precisely because a facial challenge failed if there were any applications of the statute that were not vague. The fact that a defendant fell within the statute's scope rendered a facial challenge, by definition, unavailable, because it was not the case that the statute was vague in all its applications.

Courts have recognized that the "own conduct" principle and the "all of its applications" principle are inextricable from one another. The D.C. Circuit, for instance, has described their relationship this way:

> Traditionally, a petitioner could succeed on [a facial vagueness] claim "only if the enactment was impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). That high bar was grounded in the understanding that a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010).

*United States Telecom Ass'n v. FCC*, 825 F.3d 674, 735 (D.C. Cir. 2016). As the D.C. Circuit explained, the "all of its applications" principle was "grounded in" the "own conduct" principle—one was a product of the other. *See also, e.g.*, *Agnew v. Gov't of D.C.*, 263 F. Supp. 3d 89, 95 (D.D.C. 2017) ("Traditionally, to succeed on a facial vagueness challenge, a plaintiff had to show that the enactment was impermissibly vague in all of its applications. That rule was *grounded in* the notion that a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." (emphasis added)).

It follows that if, as *Johnson* unambiguously held, the "all of its applications" principle is no longer good law, then the "own conduct" principle—for which the former

3

provided "[t]he rationale," *Vill. of Hoffman Estates*, 455 U.S. at 495 n.7—is no longer good law, either. The "all of its applications" principle and the "own conduct" principle rise or fall together.

The Supreme Court's opinion in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), confirms this reading of *Johnson*. The respondent in that case, who had two prior convictions for California burglary, argued the residual clause in the 18 U.S.C. § 16(b) "crime of violence" definition was facially void for vagueness. *Dimaya*, 138 S. Ct. at 1211. The Supreme Court agreed. *Id.* at 1210. In dissent, Justice Thomas expressed his view that "a court may not invalidate a statute for vagueness if it is clear in any of its applications," and that the respondent therefore could not prevail because California burglary clearly satisfied the § 16(b) residual clause. *Id.* at 1214 n.3. But the majority responded that *Johnson* had already disposed of this argument: "as an initial matter, *Johnson* explained that supposedly easy applications of the residual clause might not be so easy after all. . . . And still more fundamentally, *Johnson* made clear that our decisions squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.*

If the "own conduct" principle still applied—that is, if a party were still prohibited from bringing a facial vagueness challenge where his own conduct clearly falls within the statutory language—then the *Dimaya* majority would have needed to resolve the question whether California burglary (the respondent's crime of conviction) satisfied the residual clause, as Justice Thomas insisted it did. The continuing validity of the "own conduct" principle would have foreclosed the respondent's facial attack. That the majority did not address the application of the residual clause to California burglary, and instead proceeded

4

directly to the clause's facial validity, lays to rest the notion that courts may not entertain facial vagueness challenges from defendants whose own conduct a statute clearly proscribes.

Even absent *Dimaya*, the government's position makes little sense. The government does not explain, for instance, how or why the "own conduct" principle should still apply if the "all of its applications" principle, on which it was premised, has been "squarely contradict[ed]" by *Johnson*. 135 S. Ct. at 2561.

The closest the government comes to offering an explanation is its citation to a handful of post-*Johnson* cases that have held litigants still cannot prevail in a facial challenge unless a statute is vague as applied to them. ECF No. 70 at 15. According to these cases, the statute at issue in *Johnson*, the Armed Career Criminal Act (ACCA), is "in key respects *sui generis*" because determining whether a prior offense is a "crime of violence" under the ACCA residual clause entailed application of the categorical approach. *United States v. Cook*, 914 F.3d 545, 553 (7th Cir. 2019). Rather than "requiring courts to look . . . at the actual conduct underlying the defendant's prior conviction," the categorical approach instructed courts to examine "the archetypal version of the offense and then to consider whether the risk of injury posed by that version [i]s sufficient to render the crime violent." *Id.* Therefore, courts like *Cook* reasoned, *Johnson* may permit facial vagueness challenges to statutes that clearly do cover a defendant's conduct—but only if the statute at issue, like the ACCA, "call[s] for the court to engage in . . . abstract analysis" instead of "apply[ing] the statutory prohibition to a defendant's real-world conduct." *Id.*; *see also, e.g.*, *United States v. Holmes*, 2016 WL 54918, at *1 (E.D. Wis. Jan. 5, 2016) (rejecting defendant's request to conduct vagueness review "without examining the statute as applied" because § 922(g)(3), unlike ACCA, does not involve the categorical approach); *United States v. Bell*,

5

2017 WL 1479376, at *4-5 (D. Kan. Apr. 25, 2017) ("declin[ing] to extend *Johnson* beyond the context of the [ACCA]").

But nothing in *Johnson* supports these courts' reading of that opinion. The *Johnson* Court nowhere said that its rejection of the "all of its applications" principle was limited to statutes that, like the ACCA, involve applying open-ended language to an abstraction, rather than real-world facts. Indeed, just the opposite. The Court wrote that the "holdings" of its previous opinions led it to reject "the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson*, 135 S. Ct. at 2561 (emphasis omitted). For example:

> [W]e have deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. [*United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921)]. We have similarly deemed void for vagueness a law prohibiting people on sidewalks from "conducting themselves in a manner annoying to persons passing by"— even though spitting in someone's face would surely be annoying. *Coates v. Cincinnati*, 402 U.S. 611 (1971). These decisions refute any suggestion that the existence of *some* obviously risky crimes establishes the residual clause's constitutionality.

*Id.* (emphasis in original). Neither *L. Cohen Grocery* nor *Coates* involved a statute calling for application of a residual clause or similar language. By abandoning the "all of its applications" principle, the Court in *Johnson* evidently understood itself to be doing nothing more than applying the law it had articulated previously—including in cases not involving

6

statutes like the ACCA.  *Johnson* was harmonizing the law, not recognizing new exceptions to vagueness doctrine on an ad hoc, one-off basis.[2]

Post-*Johnson* Fourth Circuit cases recognize, at least implicitly, that parties can bring facial vagueness challenges even when their own conduct purportedly falls within a statute's reach, and even when that statute does not contain residual-clause-like language.  In *Kolbe v. Hogan*, 813 F.3d 160 (4th Cir. 2016), the plaintiffs argued Maryland's Firearm Safety Act was "unconstitutionally vague on its face" because it did not define certain prohibited weapons with sufficient clarity.  813 F.3d at 190.  The Fourth Circuit noted that the statute "ha[d] not been enforced against Plaintiffs, and they d[id] not claim that they were forced to forego their Second Amendment rights because they were uncertain whether weapons they wished to acquire were prohibited."  *Id.*  Notwithstanding that the application of the statute to the plaintiffs was apparently clear, the panel proceeded to the merits of the plaintiffs' claim.  *Id.* at 190-92.  Both the panel and the full Fourth Circuit, which reheard the case en banc, ultimately rejected the plaintiffs' contention.  *Id.* at 192; *Kolbe v. Hogan*, 849 F.3d 114, 149 (4th Cir. 2017) (en banc).  But in neither instance did the court seem to consider it relevant that the plaintiffs did not claim the statute was vague as applied to them.

Even more instructive is *Doe v. Cooper*, 842 F.3d 833 (4th Cir. 2016).  The plaintiffs in that case challenged a North Carolina statute prohibiting registered sex offenders from

---

[2] The Court in *Johnson* did write, as some of the government's cited cases point out, that "[i]t is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction."  135 S. Ct. at 2558; *see, e.g.*, *United States v. Kimbrough*, 319 F. Supp. 3d 912, 914-15 (M.D. Tenn. 2018) (relying on this language to hold the "own conduct" principle still governs cases involving statutes unlike the ACCA).  But *Johnson* made this observation in the context of explaining why the residual clause was facially vague—not in the context of explaining who could and could not bring a facial vagueness challenge to begin with.  Nothing in *Johnson* indicates that the residual-clause inquiry under the ACCA is in any way related to whether a defendant can facially challenge a statute that his own conduct violates.

7

visiting certain areas where minors might be present. *Does v. Cooper*, 148 F. Supp. 3d 477, 481 (M.D.N.C. 2015). Without addressing how it applied to the plaintiffs' own conduct, the district court declared one subsection of the statute to be "unconstitutionally vague on its face." *Id.* at 494-97, 506. In their appellate briefs, both parties framed the issue for review as involving the statute's facial validity. *See Doe* Appellant's Brief, attached as Exhibit A, at 12 (discussing legal standards governing "facial challenges" such as plaintiffs'); *Doe* Appellees' Brief, attached as Exhibit B, at 14 (arguing "N.C.G.S. § 14-208.18(a) is unconstitutionally vague on its face").

The Fourth Circuit affirmed. *Doe*, 842 F.3d at 844. Although the court did not explicitly specify whether it was holding the statute vague on its face or as applied, the language of its opinion strongly suggests it was the former. The court explained that statutes are vague if they "specify no standard of conduct" and lack "a constitutional core," *id.* at 842—echoing language the Supreme Court used in *Village of Hoffman Estates* to describe a facially vague provision. 455 U.S. at 495 n.7. The Fourth Circuit also made no reference to the *Doe* plaintiffs' own conduct, as it would have been required to if the "own conduct" principle remained in effect. And the court said nothing to suggest the district court and the parties were wrong to have litigated the case on the assumption that a plaintiff can challenge a statute on its face regardless of whether it applies to him.

Case law aside, the government's cramped reading of *Johnson* produces anomalous results. On the government's view, a defendant can sustain a facial vagueness challenge only if he "'show[s] that the statute is vague as applied to his particular conduct.'" ECF No. 70 at 16 (quoting *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (per curiam)). But if a defendant can make that showing, and thereby prevail on an as-applied vagueness

8

challenge, why would he ever bother attacking a statute on its face? There would be no point. A facial challenge, under the government's scheme, accomplishes nothing that an as-applied challenge does not. The government offers no suggestion for why the Supreme Court would have wanted to render facial challenges entirely superfluous.

Perhaps more puzzling, *Johnson*'s repudiation of the "all of its applications" principle means that courts may strike down a statute on its face even if it clearly covers some people's conduct. If a court does so, then the statute may not be applied to anyone, even those whose conduct the statute plainly prohibits. *See Vill. of Hoffman Estates*, 455 U.S. at 495 n.5 ("A facial challenge, in this context, means a claim that the law is invalid *in toto*—and therefore incapable of any valid application."). The result, on the government's view, is that a facially vague statute may be unenforceable against such people—but only if, by happenstance, someone to whom the statute does *not* apply successfully attacks it on its face, since those who *are* covered by the statute may not challenge it themselves. The statute's applicability to those it clearly covers, in other words, turns on the independent, and unforeseeable, action of unknown third parties. It is hard to think of a reason the *Johnson* Court would have wished to establish such a bizarre system, and the government proposes none.

The correct reading of *Johnson* is the most straightforward one: courts may invalidate a statute as vague on its face even if a party's own conduct comes within the sweep of the statute. This Court should so hold.

### B. Section 922(g)(3) Is Vague on Its Face Because It Does Not Put Ordinary People on Notice of What Conduct Is Prohibited.

Both operative terms in § 922(g)(3)—"unlawful user" and "addicted to"—are facially void for vagueness. Neither term satisfies the "stricter standard" of clarity that courts apply when reviewing criminal statutes for vagueness. *Manning*, 930 F.3d at 272-73.

9

1. **"Unlawful User"**

The government makes several attempts to show that, on its face, the term "unlawful user" gives "ordinary people fair notice of the conduct it punishes." *In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016). None is persuasive.

*First,* the government claims that "every court—including the Fourth Circuit—to have considered whether § 922(g)(3) is void for vagueness has upheld the statute." ECF No. 70 at 13. But the government's cited cases all involved as applied challenges to § 922(g)(3). *See Cook*, 914 F.3d at 554 ("[W]e are not convinced that Cook is entitled to mount a facial vagueness challenge to section 922(g)(3).");[3] *Bramer*, 832 F.3d at 909 ("Though Bramer need not prove that § 922(g)(3) is vague in all its applications, our case law still requires him to show that the statute is vague as applied to his particular conduct."); *United States v. Richards*, 350 F. App'x 252, 260-61 (10th Cir. 2009) (unpublished) (rejecting defendant's argument "that § 922(g)(3) is unconstitutionally vague as applied to him"); *United States v. Monroe*, 233 F. App'x 879, 881 (11th Cir. 2007) (unpublished) ("We also reject Monroe's contention that 18 U.S.C. § 922(g)(3) is unconstitutionally vague as applied to him because 'unlawful user' and 'addict' are undefined."); *United States v. Patterson*, 431 F.3d 832, 836

---

[3] Strictly speaking, the defendant in *Cook* raised a facial challenge, but the Seventh Circuit held such a challenge was unavailable because his conduct "undoubtedly f[ell] within the obvious core of conduct proscribed by the statute." 914 F.3d at 549, 554-55. For the reasons explained above, the Seventh Circuit's reliance on the "own conduct" principle was mistaken. Regardless, the Seventh Circuit in *Cook* did <u>not</u> address the facial validity of § 922(g)(3).

(5th Cir. 2005) ("As [§ 922(g)(3)] applies to Patterson, it is not vague; an ordinary person would understand that Patterson's actions establish him as an unlawful user.").[4]

The only case cited by the government that is not explicitly limited to an as applied vagueness challenge is *United States v. Hatches*, 75 F. App'x 188 (4th Cir. 2003) (unpublished). ECF No. 70 at 13. *Hatches*' discussion of vagueness consisted, in its entirety, of the following:

> Hatches objects to the district court's refusal to instruct the jury that it could only convict him of the § 922(g)(3) count if it determined that he was using a controlled substance while simultaneously possessing a firearm. We rejected this argument in *United States v. Jackson*. Thus, Hatches's argument is without merit. We likewise reject Hatches's alternative argument that the statute is unconstitutionally vague.

75 F. App'x at 190-91. It is unclear from the opinion whether the defendant's vagueness challenge was facial or as applied. But given the Fourth Circuit's discussion of that issue immediately after rejecting a jury-instruction claim based on the facts of the defendant's case, it seems likely his claim was facial. In any event, a one-sentence, analysis-free holding in an unpublished opinion does nothing to demonstrate § 922(g)(3) is not vague on its face.[5]

***Second***, the government attempts to discount *Weissman v. United States*, 373 F.2d 799 (9th Cir. 1967), which held facially vague a statute prohibiting any U.S. citizen "who is

---

[4] Several of the cases the government cites in this portion of its response do not involve vagueness at all, whether facial or as applied. *See United States v. Carter*, 669 F.3d 411, 415-17 (4th Cir. 2012) (addressing argument that § 922(g)(3) violates Second Amendment); *United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010) (per curiam) (same); *United States v. Yates*, 746 F. App'x 162, 164-65 (4th Cir. 2018) (unpublished) (same, and rejecting, based on particular facts of the case, defendant's claim that district court should have defined "unlawful user" for jury). Those cases therefore do not bear on whether § 922(g)(3) is void for vagueness.

[5] The government devotes a substantial portion of its response to arguing that § 922(g)(3) is not void for vagueness as applied to Mr. Hasson. ECF No. 70 at 18-21. Because Mr. Hasson did not make an as-applied challenge in his motion, he does not respond to those arguments here.

11

addicted to or uses narcotic drugs" from leaving or entering the country. 373 F.2d at 799; *see* ECF No. 70 at 18 n.13. The government notes that the statute in *Weissman* contains "different language" from § 922(g)(3). ECF No. 70 at 18 n.13. True enough, but the government does not even attempt to explain how "is addicted to or uses" (the *Weissman* language) is different in substance from "is an unlawful user of or addicted to" (the language in § 922(g)(3)). Nor can Mr. Hasson conceive of any. The differences between the two statutes are syntactical, not substantive.

Citing *United States v. Purdy*, 264 F.3d 809 (9th Cir. 2001), the government also claims "[e]ven the Ninth Circuit did not think [*Weissman*] bore any relevance to § 922(g)(3), since the Ninth Circuit later expressly rejected the challenge [Mr. Hasson] now brings." ECF No. 70 at 18 n.13. But as Mr. Hasson explained in his motion, *see* ECF No. 63 at 8 n.1, *Purdy* involved an as applied, rather than a facial, challenge. 264 F.3d at 811 ("The resolution of this void-for-vagueness challenge turns on whether the language of § 922(g)(3) put Purdy on notice that his conduct was criminal."). It is therefore completely unsurprising that the *Purdy* court did not cite to *Weissman*, which concerned only the facial validity of § 922(g)(3).

***Third,*** the government claims Mr. Hasson's reliance on *Whatley v. Zatecky*, 833 F.3d 762 (7th Cir. 2016), is misplaced. ECF No. 70 at 18 n.13. The government claims the Seventh Circuit, in *Cook*, "expressly rejected the challenge [Mr. Hasson] now brings," and so *Whatley* is irrelevant to the proposition for which Mr. Hasson cited it, i.e., that "when, as in § 922(g)(3), criminal liability hinges on the regularity or frequency of certain conduct, the statute at issue may be void for vagueness." ECF No. 70 at 18 n.13; *see* ECF No. 63 at 8. As explained above, however, *Cook* did not reach the question whether § 922(g)(3) is vague

12

on its face. The government is therefore simply mistaken when it claims the Seventh Circuit "expressly rejected the challenge [Mr. Hasson] now brings."

More important, the Fourth Circuit has endorsed the principle for which Mr. Hasson cited *Whatley*. The statute in *Doe* barred sex offenders from knowingly being at "any place where minors gather for *regularly scheduled* educational, recreational, or social programs." 842 F.3d at 838 (emphasis added). The Fourth Circuit held the italicized language rendered the statute unconstitutionally vague because a defendant had no way of knowing how often something had to occur in order to qualify as "regularly scheduled":

> The first problem stems from the language "regularly scheduled." The term "regular" means happening at fixed intervals, periodic. Even if a restricted sex offender or law enforcement officer knew precisely how often and where the "scheduled programs" took place, the statute provides no principled standard at all for determining whether such programs are "regularly scheduled."
>
> Notably, [the statute] provides no examples to guide restricted sex offenders or law enforcement as to how frequently the programs would need to occur in order to be "regularly scheduled."

*Id.* at 843.

The same is true of the standard of liability the Fourth Circuit has adopted for "unlawful user." A defendant is guilty under § 922(g)(3) if his "drug use was sufficiently consistent, prolonged, and close in time to his gun possession to put him on notice that he qualified as an unlawful user." *United States v. Sperling*, 400 F. App'x 765, 767 (4th Cir. 2010) (unpublished) (citing *Purdy*, 264 F.3d at 812). But neither the statute nor the case law provides meaningful guidance about the line between "consistent" and sporadic, between "prolonged" and abbreviated, or between "close in time" and remote.

***Fourth,*** the government argues that, though "imprecise at the margins," the terms "consistent," "prolonged," and "close in time" "give the person of ordinary intelligence a

13

reasonable opportunity to know what is prohibited." ECF No. 70 at 18. Tellingly, the government makes no effort to respond to the questions Mr. Hasson's motion raised about the uncertainty and elasticity of these terms. *See* ECF No. 63 at 6-7 ("How frequent is 'consistent' drug use—daily? Weekly? Monthly? How 'prolonged' is an 'extended' period of time—a week? Two months? Three years? And how close is close enough for 'close in time'—two weeks? Five? Ten?"). The government does not contend that either the plain meaning of these terms, or their elaboration in the case law, provides any answers. Instead, it offers nothing more than a conclusory assertion that "consistent," "prolonged," and "close in time" are sufficiently clear. Such ipse dixit is unpersuasive.

The Fourth Circuit's recent en banc decision in *Manning* is instructive. At issue in that case was a Virginia statutory scheme that authorizes state courts to "enter a civil interdiction order 'prohibiting the sale of alcoholic beverages . . . until further ordered' to a person who 'has been convicted of driving . . . while intoxicated or has shown himself to be an habitual drunkard.'" *Manning*, 930 F.3d at 268. Once declared a "habitual drunkard," an interdicted person can be criminally prosecuted for mere possession of alcohol or for being drunk in public. *Id.* at 269. Virginia statutes "do[] not define the term 'habitual drunkard,'" and "the few Virginia cases applying the challenged scheme have not provided a limiting construction of the phrase." *Id.* at 274.

The Fourth Circuit held the phrase "habitual drunkard" was void for vagueness. *Id.* at 270. It was "plain[]," the court wrote, that "the term 'habitual drunkard' itself does not assist in clearly articulating the proscriptions of the [statutory scheme]." *Id.* at 274. According to the Fourth Circuit, the word "habitual" is "susceptible to numerous interpretations" and therefore "does not provide any principles or standards for determining

14

how often or regularly an act must be performed to constitute 'habitual' behavior." *Id.* That word raises the same kind of unanswerable questions that Mr. Hasson posed in his motion, *see* ECF No. 63 at 6-7:

> [M]ust a person engage in a pattern of drinking over time that establishes a "normal manner of procedure," or is it enough that the person drinks many alcoholic beverages over an extended period? Or is a "habit" established if the person drinks numerous alcoholic beverages only every Friday and Saturday night? The language of the challenged scheme does not provide any guidance to answer these or a myriad of other questions.

*Id.* at 275.

The term "drunkard," the court reasoned, also fails to "provide any meaningful guidance regarding proscribed conduct." *Id.* The court noted that Black's Law Dictionary defines a "drunkard" as "someone who habitually consumes intoxicating substances excessively" or "an alcoholic." *Id.* But this definition sheds little light on the meaning of "habitual drunkard," since it "do[es] not identify how much alcohol a person must consume before such consumption is considered 'excessive' or . . . what frequency of behavior constitutes a 'habit.'" *Id.* As a result, "[p]olice officers, prosecutors, and even state circuit court judges likely will have differing perceptions regarding what frequency of drunkenness exceeds the necessary threshold for a person to be considered an 'habitual drunkard.'" *Id.* at 276. In short, "the term 'habitual drunkard' specifies *no* standard of conduct" and is therefore unconstitutionally vague. *Id.* at 278 (emphasis in original).

The same is true here. Just like "habitual drunkard," the term "unlawful user"—defined as someone whose drug use is "consistent, prolonged, and close in time to his gun possession," *Sperling*, 400 F. App'x at 767—relies on nebulous, open-ended standards of frequency and duration. And it incorporates an additional temporal-proximity requirement that is equally unclear and indefinite, which only exacerbates the vagueness. The statute

15

therefore fails to identify at what point someone crosses the line from an occasional consumer of drugs to an "unlawful user." Because the phrase "unlawful user" "offer[s] no meaningful standard of conduct," it is unconstitutionally void for vagueness. *Manning*, 930 F.3d at 278.

*Fifth,* in response to Mr. Hasson's argument that "a person can drift in and out of 'unlawful user' status," the government contends that "[t]he Constitution does not have a problem . . . with an individual self-selecting in and out of criminal conduct." ECF No. 70 at 20. Mr. Hasson did not argue, however, that it is unconstitutional to impose liability based on conduct that a defendant can discontinue and then resume. Rather, he argued that when fuzzy statutory language makes it hard for a defendant to know whether he has, in fact, discontinued or resumed that conduct, the statute is impermissibly vague. It is not the on-off nature of "unlawful user" status that is problematic, but rather the difficulty of knowing whether the switch is on or off. *See United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) ("[T]he exact reach of [§ 922(g)(3)] is not easy to define.").[6]

*Sixth,* the government asks this Court to ignore *United States v. Herrera*, 289 F.3d 311 (5th Cir. 2002), because "the Fifth Circuit, in a later case, expressly condemned the language and reasoning of the vacated *Herrera* panel opinion." ECF No. 70 at 21 (citing *United States v. Patterson*, 431 F.3d 832 (5th Cir. 2005)). This may be true, but it does nothing to undermine the *Herrera* panel opinion's persuasiveness. Like the *Herrera* en banc opinion, *Patterson* makes no attempt to grapple with the reasoning of the *Herrera* panel opinion; it simply notes, citing to the en banc opinion and without further elaboration, that

---

[6] The other § 922(g) subsections the government mentions do not present the same hazard. ECF No. 70 at 20 (citing § 922(g)(2), (5), (8)). If "a fugitive is caught, an alien gains lawful status, or a court order prohibiting stalking is lifted," ECF No. 70 at 20, the would-be gun possessor will be able to determine without any difficulty that he does not fall into a prohibited status.

16

"[t]he *Herrera I* standard employed by the district court was rejected by this court in *Herrera II*." 431 F.3d at 838. The government concedes that the *Herrera* "en banc opinion did not address at all the thorough analysis in the panel opinion." ECF No. 70 at 21. If that is true, then *Patterson*'s passing citation to that en banc opinion also does not throw the *Herrea* panel opinion's persuasive value into doubt. In sum, neither the government in this case nor the Fifth Circuit—in either the *Herrera* en banc opinion or in *Patterson*—has ever explained why the *Herrera* panel opinion is unconvincing.

### 2. "Addicted to"

The government also argues the statutory definition of "addicted to" is not unconstitutionally vague. These arguments fare no better.

***First,*** the government maintains that the first part of the "addicted to" definition—"any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare," 21 U.S.C. § 802(1)—is "very similar to language that courts have deemed not unconstitutionally vague." ECF No. 70 at 22. The only case the government cites to support this contention is *Howard Opera House Associates v. Urban Outfitters, Inc.*, 322 F.3d 125 (2d Cir. 2003). ECF No. 70 at 22. In that case, the appellants brought a vagueness challenge to a local ordinance making it illegal "to make or cause to be made any loud or unreasonable noise." *Howard Opera House Assocs.*, 322 F.3d at 127. The ordinance deemed noise to be unreasonable "when it disturbs, injures or endangers the peace or health of another or when it endangers the health, safety or welfare of the community." *Id.* The Second Circuit held the appellants' claim was "effectively precluded by [its] decision in *Pro–Choice Network v. Schenck*, 67 F.3d 359 (2d Cir. 1994), where [it] held that an injunction prohibiting 'excessively loud sound' that 'injures, disturbs, or endangers the health or safety' of others is sufficiently clear to withstand a vagueness challenge." *Id.* at 128. There were

17

no material differences between the ordinance and the injunction, the court held, and therefore the ordinance passed constitutional muster. *Id.*

The *Schenck* court's analysis of the vagueness issue could generously be described as cursory:

> [The appellant] also cites the prohibition on "excessively loud sounds" in paragraph 1(d) as vague. This provision, however, is accompanied by a definitional clause that makes clear that an "excessively loud sound" is one that "injures, disturbs, or endangers the health or safety of any patient or employee of a health care facility at which abortions are performed." The noise restriction, therefore, is valid.

67 F.3d at 373. Because the Second Circuit did not provide any analysis to support its conclusion, it is hard to know why the court believed the quoted language was adequately particular. The court may have reasoned that sound waves can injure or endanger health and safety in a relatively predictable manner that is susceptible to medical or scientific analysis ahead of time. And that injury is inflicted on identifiable individuals, i.e., "any patient or employee of a health care facility at which abortions are performed." *Id.* Sound above a certain decibel level, in other words, may be likely to cause such people ear pain or hearing loss, whereas sound below that level is not.

To the extent such reasoning underlay the holding in *Schenck* (and therefore *Howard Opera House Associates*), it is inapplicable here. Generalized endangerment of "the public morals, health, safety, or welfare" is not subject to technical, mathematical calibration. The Supreme Court's opinion in *Musser v. Utah*, 333 U.S. 95 (1948), which Mr. Hasson cited in his motion, makes clear that terms like "public health" and "public welfare" are too ambiguous to satisfy the Due Process Clause. *See* ECF No. 63 at 14-15. And while it is clear how loud noises can damage the health of the specific people identified in the *Schenck*

18

injunction, it is unclear how a defendant's drug addiction would endanger the health, safety, or welfare of "the public" at large (as opposed to his own health, safety, or welfare).

***Second,*** the government asserts that the second part of the "addicted to" definition—someone "who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction," 21 U.S.C. § 802(1)—has an "ordinary and common" meaning that saves it from vagueness. ECF No. 70 at 22-23. The government posits that this definition covers someone who "has lost the power of self-control with respect to the drugs he is taking" in that "he can't stop, notwithstanding even some latent desire to do so." ECF No. 70 at 23. But this argument works only by rewriting the statutory definition. The statute does define an addict as someone "who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to *the drugs he is taking*"; instead, it defines an addict as one "who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to *his addiction*." Thus the definition is indeed "circular" and "tautological," ECF No. 63 at 14, insofar as it defines addiction as a condition involving addiction. Someone reading this statutory definition would have no way of knowing what an addict is to begin with.

*Kansas v. Crane*, 534 U.S. 407 (2002), is not to the contrary. *See* ECF No. 70 at 23. That case did not involve a vagueness challenge. Rather, the Supreme Court in *Crane* provided a definition for the term "lack of control," which it had said in a previous opinion was a precondition of civilly committing dangerous sexual offenders. 534 U.S. at 409-10 (citing *Kansas v. Hendricks*, 521 U.S. 346 (1997)). The *Crane* Court crafted its own definition of a term it had also crafted itself; it did not purport to hold that the phrase "lack of control" has a clear meaning in the abstract, whenever and wherever used. *Id.* at 412-13.

19

Indeed, the Court granted certiorari in *Crane* precisely because the Kansas Supreme Court had misinterpreted *Hendricks*' use of the ambiguous phrase "lack of control." *Id.* at 411-12. And the Court noted in *Crane* that the definition it was fashioning "provides a less precise constitutional standard than would those more definite rules for which the parties have argued." *Id.* at 413.

### C. **Conclusion**

For the reasons described above and in Mr. Hasson's motion, this Court should dismiss Count Three of the indictment.

Respectfully submitted,

James Wyda
Federal Public Defender

        /s/
Elizabeth G. Oyer, #95458
Cullen Macbeth, #810923
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Telephone: (410) 962-3962
Facsimile: (410) 962-0872
Email: liz_oyer@fd.org
       cullen_macbeth@fd.org