UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. GJH-19-0096 |
| CHRISTOPHER PAUL HASSON | * | |

\* \* \* \* \* \* \* \* \* \* \*

**REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANTS**

On June 24, 2019, Defendant Christopher Paul Hasson filed a motion to suppress evidence seized pursuant to search warrants dated January 11, 2019, as well as all derivative evidence. ECF No. 66. The government responded on August 5, 2019. ECF No. 70 at 24-32. Mr. Hasson now submits this reply.

**A.   The January 11, 2019 Warrant Affidavit Does Not Establish Probable Cause to Believe a Crime Has Been Committed.**

In his motion, Mr. Hasson explained that Agent Harrison's January 11, 2019 affidavit does not demonstrate a "fair probability" that Mr. Hasson's email accounts, his historical cell-site data, or the movements of his car would contain evidence of any crime identified in the affidavit. ECF No. 66 at 10. The government does not deny that the facts in the affidavit do not add up to probable cause to believe Mr. Hasson had committed murder within federal jurisdiction (18 U.S.C. § 1111), murder of officers or employees of the United States (18 U.S.C. § 1114), or assassination of Supreme Court justices, Cabinet secretaries, or members of Congress (18 U.S.C. § 351). Instead, the government accuses Mr. Hasson of basing his argument on "his individual actions, considered discretely"—a "segmented analysis [that] has been rejected by the Supreme Court and other courts, because the magistrate judge must look to the totality of the circumstances." ECF No. 70 at 27-28.

It is of course true that "[a]n assessment of the presence of probable cause must be based on the totality of the relevant circumstances." *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011). But that totality of the circumstances still must "make a reasonably prudent person think that a search would reveal contraband or evidence of *a crime*." *United States v. Green*, 740 F.3d 275, 282 (4th Cir. 2014) (emphasis added). And a reasonably prudent person cannot believe he will find "evidence of a crime" unless "a law has been broken," i.e., unless a crime has been committed. *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014); *see also id.* ("An officer cannot have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law.").

The totality-of-the-circumstances test, in other words, is not a substitute for the existence of a crime—an all-purpose placeholder the government can fall back on when there is no basis to believe a crime has actually been committed. Rather, it is the metric by which courts measure whether there is probable cause to believe a crime has in fact occurred. If the totality of the circumstances establishes probable cause to believe a crime has been committed, then a warrant is valid; if not, then not. But a vague, passing reference to "the totality of the circumstances" cannot save a warrant affidavit that does not establish a fair probability that a crime has been committed.

Yet that is all the government offers in its response. The government claims "[t]he detailed narrative of the evidence against [Mr. Hasson] was sufficient for Magistrate Judge Day to find probable cause to issue the warrants," but it does not say why. ECF No. 70 at 28. The facts in Agent Harrison's affidavit provide no reason to believe that murder or assassination—the substantive crimes he identifies—has occurred, and the government does

not argue otherwise. The government seems to suggest, instead, that as long as the "totality of the circumstances" plants a faint suspicion in the magistrate's mind that something fishy is afoot, a warrant may issue. But that is not the law.

The only crimes the government even half-heartedly tries to find a basis for in the affidavit are attempted murder and conspiracy. *See* Ex. A (affidavit claiming there is probable cause to believe search will reveal evidence of "murder or attempted murder of officers and employees of the United States" and "conspiracy to commit violations of [the murder and assassination statutes]").

In response to Mr. Hasson's argument that the conduct in the affidavit does not amount to an attempt, the government argues he "ignores the vast summary of the defendant's conduct in the 34-page affidavit." ECF No. 70 at 28. As Mr. Hasson explained in his motion, an attempt requires "a substantial step toward commission of a substantive offense." *United States v. Sterling*, 860 F.3d 233, 242 (4th Cir. 2017). That step must be "more than mere preparation but less . . . than completion of the crime." *United States v. Engle*, 676 F.3d 405, 423 (4th Cir. 2012) (ellipsis in original). But the government does not identify which parts of the affidavit's "vast summary" suggest Mr. Hasson took a "substantial step" toward committing murder—one that was more than "mere preparation." That is because none does. The government's "vast summary" argument simply repackages its "totality of the circumstances" argument; it is no more persuasive with respect to attempt than the substantive offenses of murder or assassination.

As to conspiracy, the government notes "the affidavit describes how [Mr. Hasson] sent another individual a letter detailing his beliefs, and attempted to send the Breivik manifesto—which was his personal lodestar—to a relative, during the time period in which

[Mr. Hasson] undertook the other conduct described in the affidavit." ECF No. 70 at 28. These allegations are wholly inadequate to establish a conspiracy. A conspiracy under 18 U.S.C. § 371 requires proof of, among other things, "an agreement between two or more people." *United States v. Camara*, 908 F.3d 41, 46 (4th Cir. 2018). Neither of the government's cited facts suggests such an agreement.

*First,* Agent Harrison's affidavit alleges only that Mr. Hasson used his personal email account to send to his work account "a draft letter HASSON apparently wrote to a known American neo-Nazi leader identifying himself (HASSON) as a White Nationalist for over 30 years." Ex. A at 6. It is not clear from this allegation that Mr. Hasson ever actually sent his "draft" letter. But even if he did, there is no indication that the intended recipient of the letter ever received it or responded, much less that he entered into an agreement to commit murder or assassination.[1] Indeed, it is unlikely Mr. Hasson was even hoping the intended recipient would agree to help him commit those crimes. Mr. Hasson wrote in the letter that he had heard the intended recipient was "an informant." Ex. A at 6. It would be strange to the point of implausible for Mr. Hasson to reach out to a suspected informant to recruit him in a plot to assassinate members of Congress.

*Second,* Agent Harrison's affidavit asserts Mr. Hasson tried to email the Breivik manifesto to his son, but the message "was returned to HASSON as 'undeliverable.'" Ex. A at 8. The affidavit itself therefore establishes Mr. Hasson's son did not receive the manifesto,

---

[1] As the government is presumably aware, Harold Covington, whom the affidavit identifies as the "likely" intended recipient of Mr. Hasson's letter, *see* Ex. A at 6, died in July 2018, six months before Agent Harrison applied for his search warrant. *Harold Covington*, Wikipedia, https://en.wikipedia.org/wiki/Harold_Covington (last visited Aug. 23, 2019). Covington's death forecloses the possibility that he was involved in any conspiracy with Mr. Hasson.

4

and there is no allegation that Mr. Hasson sent the manifesto to his son via some other means, that this second effort was successful, or that his son responded. And even if any or all of these allegations were in the affidavit, it simply does not follow from Mr. Hasson's sharing the manifesto that he and his son had agreed to assassinate members of the Supreme Court. The only way this allegation establishes a conspiracy is through rank speculation and wild leaps of logic.

Agent Harrison's affidavit did not establish any basis—much less a "substantial basis"—to believe a search would turn up evidence of murder, attempted murder, assassination, or conspiracy to commit the foregoing crimes. *See United States v. Lyles*, 910 F.3d 787, 794 (4th Cir. 2018) (holding warrant invalid where affidavit "did not provide a substantial basis for the magistrate to find probable cause").

### B. The Good Faith Exception Does Not Apply.

The government argues that even if the January 11, 2019 warrants were not supported by probable cause, this Court should not suppress their fruits because law enforcement officers relied on them in good faith. ECF No. 70 at 29. This argument is unavailing.

"[T]he good faith exception to the exclusionary rule allows courts to introduce evidence obtained in violation of the Constitution but in reasonable reliance on a defective warrant." *United States v. Seerden*, 916 F.3d 360, 366 (4th Cir. 2019). The exception does not apply, however, when "a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* For the reasons explained above, the affidavit supporting the January 11th warrant was entirely devoid of probable cause to believe a search would turn up evidence of murder, attempted murder, assassination, or conspiracy to commit those crimes. No law enforcement officer examining Agent Harrison's affidavit could reasonably conclude Mr. Hasson had committed any of

5

those offenses. Although the affidavit may establish that Mr. Hasson holds extremist views or that he fantasized about violence toward his political opponents, those allegations do not establish that "a law has been broken." *Williams*, 740 F.3d at 312. There are simply no facts to substantiate a reasonable belief that Mr. Hasson committed one of the crimes identified in the affidavit.

### C. The Government Has Waived Any Argument That the January 22, 2019 Warrant Affidavit Establishes Probable Cause.

Mr. Hasson's motion argued the January 22, 2019 warrants for TARGET EMAIL-1 and TARGET EMAIL-2 were invalid because the supporting affidavit contained only (1) the information from the January 11, 2019 affidavit, and (2) evidence obtained pursuant to the invalid January 11, 2019 warrant. ECF No. 66 at 17-18. In its response, the government argues Mr. Hasson lacks standing to challenge searches of TARGET EMAIL-3 and TARGET EMAIL-4, which Judge Sullivan also authorized in the January 22nd warrant. ECF No. 70 at 30. But it fails entirely to address the validity of the January 22nd warrant insofar as it authorized searches of TARGET EMAIL-1 and TARGET EMAIL-2. *See* ECF No. 70 at 30. The government has therefore waived any argument that that portion of the January 22nd warrant is valid. This Court should suppress the fruits of those latter searches.

### D. The Government Has Waived Any Argument That the February 8, 2019 Warrant Affidavit Establishes Probable Cause.

Likewise, Mr. Hasson's motion argued the February 8, 2019 warrant authorizing further searches of TARGET EMAIL-1 and TARGET EMAIL-2 was invalid because the supporting affidavit relied on nothing more than (1) information recycled from previous applications, and (2) evidence seized pursuant to the invalid January 11th and January 22nd warrants. ECF No. 66 at 17-18. The government's response does not address this argument, either. *See* ECF No. 70 at 30-33. Accordingly, the government has waived any argument

6

that those additional searches of Mr. Hasson's email account were lawful, and this Court should suppress their fruits.

E. **The Warrants for Mr. Hasson's Workplace Are Not Supported by Probable Cause.**

The government argues the February 12, 2019 warrant for Mr. Hasson's work cubicle is valid because, even if information discovered pursuant to the January 11th warrant—i.e., emails indicating Tramadol purchases—is removed from the February 12, 2019 affidavit, that affidavit still establishes probable cause. ECF No. 70 at 30. Specifically, the government asserts the February 12th affidavit demonstrates probable cause because it: (1) "describes [Mr. Hasson's] conduct with respect to white supremacy and Breivik," and (2) "describes how [Mr. Hasson] has no Tramadol prescriptions but was seen on video taking 'an unknown substance in pill form on a daily basis,' from one of his desk drawers." ECF No. 70 at 30. Even in combination, these facts fall well short of probable cause.

The February 12th affidavit seeks authorization to search for evidence of only three crimes: wrongful use of a controlled substance, simple possession of Tramadol, and importation of Tramadol. Ex. J at 2. Mr. Hasson's purported interest in white supremacy and the Breivik manifesto has no connection whatsoever to any of these controlled substance offenses. The fact that Mr. Hasson allegedly read the Breivik manifesto gives a neutral magistrate no reason to believe law enforcement would find Tramadol in his desk. That manifesto does not mention Tramadol at all—or, more to the point, the affidavit does not allege that it does.

As for the allegation that video showed Mr. Hasson taking pills at work, this fact does not establish that law enforcement would find contraband or evidence of a crime in his desk. The February 12th affidavit candidly admits that the substance Mr. Hasson was ingesting is

7

"unknown." Apart from the messages unlawfully seized from Mr. Hasson's email accounts, the affidavit provides no reason to believe the pills in his desk contained a controlled substance, rather than vitamins, dietary supplements, prescribed medications, or other entirely legal substances. An employee's ingestion of pills at work, standing alone, is insufficient to establish probable cause to search his desk.

The affidavit supporting the February 14, 2019 warrant is almost word-for-word the same as the February 12th affidavit, except that it also asserts officers searched Mr. Hasson's desk pursuant to the February 12th warrant and found pills that testing revealed to be Tramadol. For the reasons explained above, those pills were seized pursuant to an unlawful warrant and therefore cannot contribute to probable cause. *See, e.g.*, *United States v. Najjar*, 300 F.3d 466, 475-79 (4th Cir. 2002). The remainder of the February 14th affidavit is insufficient to establish probable cause for the same reasons that the February 12th affidavit is insufficient: it relies on information from the unlawful January 11th warrant and recites information (regarding the Breivik manifesto and Mr. Hasson's ingestion of an "unknown" substance) that does not add up to probable cause.

Evidence seized pursuant to both workplace warrants should be suppressed.

F. **The February 14, 2019 Warrants for Mr. Hasson's Apartment, Car, Email Accounts, and Blood Are Unsupported by Probable Cause.**

The government asserts the February 14, 2019 affidavit provided probable cause to search Mr. Hasson's home and car "based on unchallenged evidence obtained from Coast Guard computer systems; information from a Federal Firearms Licensee; evidence of substantial drug purchases found in TARGET EMAIL-3; and February 12 Warrant in which Tramadol was found in [Mr. Hasson's] desk." ECF No. 70 at 31. It is unclear to which "evidence obtained from Coast Guard computer systems" the government is referring. The

only "evidence" the February 14th affidavit mentions that came from Mr. Hasson's work computer consists of allegations about Mr. Hasson's extremist views, his correspondence with a supposed neo-Nazi, and his perusal of the Breivik manifesto at work. *See* Ex. K at 6-11. But as explained above, these allegations do not even come close to establishing that Mr. Hasson had committed murder, attempted to commit murder, or conspired to commit murder. Nor do they have any bearing on whether law enforcement would find Tramadol in his home or car.

As for the supposed "information from a Federal Firearms Licensee," the affidavit's only mention of a FFL is the following sentence: "According to records obtained from the holder of a Federal Firearms License (FFL), HASSON purchased a Springfield 1911 45ACP pistol for $899.99 from a business in Cedar Bluff, Virginia, on October 1, 2017." Ex. K at 12. The affidavit does not assert, however, that purchasing a 45ACP pistol is illegal. And even if it were, this fact would not establish probable cause to believe Mr. Hasson had committed murder, attempted murder (which requires a "substantial step" beyond "mere preparation"), conspiracy to commit murder, or a controlled substance offense.

As explained above, the "February 12 Warrant in which Tramadol was found in [Mr. Hasson's] desk" was obtained illegally. Evidence seized pursuant to that warrant therefore cannot contribute to probable cause in the February 14th affidavit. *See Najjar*, 300 F.3d at 475-79.

That leaves evidence obtained from TARGET EMAIL-3. The February 14th affidavit claims that, "[u]sing TARGET EMAIL-1, TARGET EMAIL-5, and TARGET EMAIL-6, HASSON placed orders by sending emails to his supplier at TARGET EMAIL-3, specifically requesting that quantities of Tramadol (a Schedule IV controlled substance) be shipped for

9

overnight delivery." Ex. K at 25-26. The affidavit also contains a chart "summariz[ing] records from prior email search warrants for TARGET EMAIL-1 and TARGET EMAIL-3," which shows the date, price, and quantity of various Tramadol purchases Mr. Hasson purportedly made. Ex. K at 26-27. But the affidavit does not make clear that this information came from TARGET EMAIL-3, rather than TARGET EMAIL-1. For the reasons described above, all searches of the latter were illegal, and thus their fruits cannot contribute to probable cause in the February 14th affidavit. *See Najjar*, 300 F.3d at 475-79. That affidavit therefore does not provide a substantial basis, untainted by prior illegality, to believe a search of Mr. Hasson's car or home would reveal evidence of a crime identified in the affidavit.

The same is true with respect to the search of TARGET EMAIL-5 and TARGET EMAIL-6, which the February 14th warrant also authorized. The government claims the February 14th affidavit supplies probable cause to search those accounts based on "evidence of substantial drug purchases found in TARGET EMAIL-3, bank records, and unchallenged evidence obtained from Coast Guard computer systems." ECF No. 70 at 31. Likewise, the government attempts to ground probable cause for a search of Mr. Hasson's blood in "evidence of substantial drug purchases found in TARGET EMAIL-3, video surveillance showing [Mr. Hasson] consuming pills at work, and the discovery of Tramadol in [Mr. Hasson's] desk drawer based on the February 12 Warrant." ECF No. 70 at 31. All these categories of evidence, however, either add nothing to probable cause or were obtained in violation of the Fourth Amendment, as explained above and in Mr. Hasson's motion.

### G. The Inevitable Discovery Doctrine Does Not Apply.

The government argues that even if law enforcement had not obtained the challenged search warrants, it would have sought a warrant for TARGET EMAIL-3, which belonged to Mr. Hasson's alleged distributor. ECF No. 32. That warrant, the government asserts, would

have turned up "substantial evidence of [Mr. Hasson's] unlawful purchases of Tramadol," which would inevitably have led officers to seek warrants for his home and email. ECF No. 70 at 32.

The government's argument relies on the inevitable discovery doctrine, an exception to the exclusionary rule that "allows the government to use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have ultimately or inevitably discovered the evidence by lawful means." *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017). But the exception does not apply here. Officers would have sought a warrant for TARGET EMAIL-3 only if they had a basis to suspect it contained evidence of Mr. Hasson's alleged drug purchases, and they obtained a basis for that suspicion only after searching TARGET EMAIL-1 and TARGET EMAIL-2. The searches of those latter email accounts, however, were illegal, for all the reasons explained above. If the unlawful January 11th warrant had not issued in error, police would not have searched Mr. Hasson's personal email accounts, and they would never have discovered the existence of TARGET EMAIL-3. Thus the government cannot show it would "inevitably" have sought (and obtained) a warrant for TARGET EMAIL-3 "by lawful means." It was only unlawful activity—i.e., the execution of the January 11th warrant—that led officers to TARGET EMAIL-3 in the first place.

**H.     Conclusion**

For the reasons described above and in Mr. Hasson's motion, this Court should suppress evidence seized pursuant to the January 11th search warrants and all derivative evidence.

Respectfully submitted,

James Wyda
Federal Public Defender


<u>          /s/          </u>
Elizabeth G. Oyer, #95458
Cullen Macbeth, #810923
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
Telephone: (410) 962-3962
Facsimile: (410) 962-0872
Email: liz_oyer@fd.org
　　　　cullen_macbeth@fd.org