ATTACHMENT A

STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

At all relevant times, the Defendant, **CHRISTOPHER PAUL HASSON ("HASSON")**, was a Lieutenant in the United States Coast Guard. Prior to approximately June 2016, **HASSON** owned a residence and lived in Currituck, North Carolina (the "North Carolina residence"). In approximately June 2016, **HASSON** moved to a rented residence in Silver Spring, Maryland (the "Maryland Residence"), and was assigned to work at Coast Guard Headquarters in Washington, D.C.

From at least March 2016 through early February 2019, using various email accounts (including an overseas encrypted email account), **HASSON** continually ordered Tramadol, a Schedule IV controlled substance, from various illegal internet-based distributors. **HASSON** usually would pay for the Tramadol by using MoneyGram or Western Union to send money to various individuals in Mexico, at the direction of the Mexico-based distributor. The distributor then would cause the Tramadol to be shipped to **HASSON** by UPS or FedEx, typically from California and typically in 100mg pills, at addresses selected by **HASSON**, including **HASSON**'s North Carolina and Maryland residences. **HASSON** then would conceal the Tramadol in other packaging at his residence and work. The chart below details some of **HASSON**'s Tramadol purchases:

| Date Order Placed | Order | Payment | Payment Method | Recipient Location | Delivery Service | Recipient Address |
|---|---|---|---|---|---|---|
| 3/25/2016 | 100 Tramadol (100mg) | $220 | MoneyGram | Tijuana, Mexico | | North Carolina Residence |
| 3/28/2016 | 1 Tramadol | $25 | | | | North Carolina Residence |
| 4/10/2016 | 100 Tramadol (100mg) | $180 | MoneyGram | Culiacan, Mexico | | North Carolina Residence |
| 5/24/2016 | 100 Tramadol (50mg) | $78 | | | | North Carolina Residence |
| 8/16/2016 | 100 Tramadol (100mg) | $200 | MoneyGram | Culiacan, Mexico | FedEx | Maryland Residence |
| 10/14/2016 | 100 Tramadol | $215 | MoneyGram | Tijuana, Mexico | UPS | North Carolina Residence |

Rev. August 2018

| 12/21/2016 | 100 Tramadol | $185 | Sharemoney | Tijuana, Mexico | UPS | North Carolina Residence |
|---|---|---|---|---|---|---|
| 2/13/2017 | 100 Tramadol | $215 | Sharemoney | Tijuana, Mexico | UPS | North Carolina Residence |
| 4/2/2017 | 200 Tramadol/ 300 Tramadol | $365 | MoneyGram | Tijuana, Mexico | UPS | North Carolina Residence |
| 7/10/2017 | 150 Tramadol (100mg) | $230 | MoneyGram | | | Maryland Residence |
| 7/13/2017 | 300 Tramadol | $520 | MoneyGram | Tijuana, Mexico | | Maryland Residence |
| 9/13/2017 | 300 Tramadol | $520 | MoneyGram | Tijuana, Mexico | | Maryland Residence |
| 11/14/2017 | 300 Tramadol | $530 | MoneyGram | Tijuana, Mexico | FedEx | Maryland Residence |
| 1/23/2018 | 300 Tramadol | $520 | MoneyGram | Tijuana, Mexico | UPS | Maryland Residence |
| 3/25/2018 | 300 Tramadol | $530 | MoneyGram | Tijuana, Mexico | UPS | Maryland Residence |
| 5/7/2018 | 300 Tramadol | $530 | MoneyGram | Tijuana, Mexico | UPS | Maryland Residence |
| 6/28/2018 | 300 Tramadol | $530 | MoneyGram | Tijuana, Mexico | UPS | Maryland Residence |
| 8/14/2018 | 300 Tramadol | $520 | Western Union | Tijuana, Mexico | FedEx | Maryland Residence |
| 10/9/2018 | 300 Tramadol | $520 | Western Union | Tijuana, Mexico | FedEx | Hotel in Moss Point, Mississippi |
| 11/30/2018 | 300 Tramadol | $520 | Western Union | Tijuana, Mexico | FedEx | Maryland Residence |
| 1/8/2019 | 300 Tramadol | $520 | Western Union | Tijuana, Mexico | FedEx | Maryland Residence |
| 2/5/2019 | 300 Tramadol | $520 | Western Union | Tijuana, Mexico | FedEx | Maryland Residence |

**HASSON** ordered the Tramadol for personal consumption. From at least March 2016 through early February 2019, **HASSON** ordered at least 4,650 Tramadol pills and personally consumed the vast majority of them, usually daily, including while at work at Coast Guard Headquarters. At no relevant time did **HASSON** have a lawful prescription for Tramadol, and **HASSON** knew that he did not have any such lawful prescription. **HASSON**'s Tramadol possession was unlawful, and his consumption of Tramadol was consistent, prolonged, and close in time to February 15, 2019.

During the timeframe in which **HASSON** used Tramadol, **HASSON** conducted certain relevant internet searches and visited certain relevant websites. For example, on July 12, 2017, **HASSON** visited the following websites:

- http://prescription-drug.addictionblog.org/how-long-does-tramadol-withdrawal-last/

- http://americanaddictioncenters.org/withdrawal-timelines-treatments/tramadol/

- Im addicted to tramadol | Tramadol | Brain and nerves | Community ...

- http://prescription-drug-addictionblog.org/how-to-stop-taking-tramadol

Also on July 12, 2017, **HASSON** conducted the following internet searches:

- Does anyone have a good tapering schedule for tramadol?

- easiest taper off tramadol

- How long does it take to get off tramadol?

Similarly, on November 30, 2017, **HASSON** conducted an internet search for "how to come off tramadol" and then visited an article titled "How To Stop Tramadol Without Withdrawal Symptoms?"

Pursuant to a federal arrest warrant, agents from the Federal Bureau of Investigation and Coast Guard Investigative Service arrested **HASSON** on February 15, 2019, at Coast Guard Headquarters. Incident to **HASSON**'s arrest, agents recovered from **HASSON**'s backpack approximately 196 Tramadol pills. Pursuant to a search warrant executed the same day, agents also recovered approximately 106 Tramadol pills from **HASSON**'s desk at Coast Guard Headquarters. Pursuant to a warrant, agents obtained a blood sample drawn from **HASSON** on the date of his arrest; the blood sample showed that **HASSON** had Tramadol in his blood stream that day.

During the execution of a search warrant on **HASSON**'s residence in Silver Spring, Maryland, on February 15, 2019, agents recovered approximately 122 Tramadol pills, as well as a plastic container and packaging that tested positive for Tramadol residue. From the residence, agents also recovered the following firearms owned or possessed by **HASSON**: (1) a Stag Arms AR15 5.56mm rifle (purchased by **HASSON** on October 1, 2009, in Petaluma, California); (2) a Ruger CQR Model X15 rifle; (3) a DPMS Panther Arms 308 Model LR-308 rifle; (4) a Bergara 308 rifle (purchased by **HASSON** on December 30, 2017, in Chantilly, Virginia); (5) a Remington Model 241 .22 caliber rifle; (6) a Ranger 101-16 .22 caliber rifle; (7) a Marlin Model 795 rifle; (8) a Remington 870 shotgun (purchased by **HASSON** on June 21, 2009, in Tamales, California); (9) another Remington 870 shotgun (purchased by **HASSON** on March 21, 2012, in Glendale, Arizona); (10) a Glock handgun (purchased by **HASSON** on May 7, 2016, in Chesapeake,

Rev. August 2018

14

Virginia); (11) an H&K handgun (purchased by **HASSON** on January 24, 2015, in Norfolk, Virginia); (12) a Sig Sauer Model 1911 handgun; (13) a Springfield .45 caliber handgun (purchased by **HASSON** on October 1, 2017, in Chantilly, Virginia); (14) an R Guns revolver; (15) an RG 14 revolver; (16) an assembled firearm silencer; and (17) a disassembled firearm silencer. Each gun was manufactured outside the State of Maryland, and therefore traveled in interstate commerce prior to recovery in the State of Maryland on February 15, 2019. Furthermore, during the search of **HASSON**'s residence, in close proximity to the guns described above, agents found multiple magazines that could accept more than 15 rounds of ammunition, as well as many hundred rounds of ammunition.

The components of the assembled and disassembled firearm silencers were purchased by and shipped to **HASSON** from a company in California. Therefore, possession of the firearm silencers was in or affecting interstate commerce. Once **HASSON** obtained the firearm silencer components, **HASSON** used a drill to complete and assemble one firearm silencer. **HASSON** knew that the assembled and disassembled firearm silencers were, in fact, firearm silencers. The assembled and disassembled firearm silencers were not, and **HASSON** knew they were not, registered in the National Firearms Registration and Transfer Record. Further, the assembled and disassembled firearm silencers did not, and **HASSON** knew they did not, have serial numbers.

SO STIPULATED:

_____
Thomas P. Windom
Assistant United States Attorney

_____
Christopher Paul Hasson
Defendant

_____
Liz Oyer, Esq.
Counsel for Defendant