**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. GJH-19-96** |
| | * | |
| **CHRISTOPHER PAUL HASSON,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| ******** | | |

**GOVERNMENT'S RESPONSE TO
DEFENSE RESPONSE TO GOVERNMENT SENTENCING MEMORANDUM**

On January 17, 2020, the Government filed its Memorandum in Aid of Sentencing. ECF No. 104. On January 24, 2020, the defendant responded to the Government's filing. ECF No. 107. In the defendant's response, the defendant objects to the Court's consideration of information from an FBI sniper that was included in the Government's original sentencing memo. *See* ECF No. 107 at 5-7. In order to address the defendant's objection, while not agreeing that the objection is valid, the Government here files the accompanying Affidavit of ▇▇▇▇▇▇. The filing of this affidavit obviates any need to call Special Agent ▇▇▇ as a witness at the sentencing hearing, and is consistent with the defendant's use of Dr. Dunn's report without calling her as a witness.

    Respectfully submitted,

    Robert K. Hur
    United States Attorney

    /s/_____
    Thomas P. Windom
    Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GJH-19-96 |
| | * | |
| CHRISTOPHER PAUL HASSON, | * | |
| | * | |
| Defendant | * | |
| | * | |

********

**AFFIDAVIT OF** ▉

1. My name is ▉. I submit this affidavit in the above-captioned case, *United States v. Christopher Paul Hasson*, Criminal No. GJH-19-96.

2. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2005. During that time, I have served on two FBI SWAT teams for a total of 12 years, as a sniper for 10 years, as a firearms instructor for eight years, as a tactical instructor for seven years, and as sniper team leader for one year. In 2020, I was selected to be the Principal Firearms Instructor for the Baltimore Field Office, which covers the States of Maryland and Delaware. My resume is attached as Exhibit A.

3. In June 2009, I was certified as a sniper at the FBI Sniper School. The instruction consisted of two weeks of training at Fort Dix, New Jersey, conducted by FBI SWAT Operations Unit Instructors. During the course, I was instructed on various topics, including ballistics, precision marksmanship, concealment, and other tradecraft necessary for the role. To remain current as an FBI sniper, I have attended ongoing training on an approximately monthly basis, including maintaining all qualification standards, for ten years. From 2009 to 2010, I served as the Sniper Team Leader for the FBI Baltimore Field Office's SWAT team. In 2012, I served as an Instructor at the Basic Sniper School for Maryland Law Enforcement.

4. Because of my training and experience, I am knowledgeable of information, training, tactics, capabilities, and equipment relied on by snipers.

5. Prior to Mr. Hasson's arrest, I reviewed and opined on certain content from a U.S. Coast Guard report of Mr. Hasson's internet activity. My training and experience as a sniper allowed me to provide analysis of the reviewed information.

6. On or about May 9, 2019, I reviewed and opined on certain content for the Government's Second Motion for Detention Pending Trial (ECF No. 42). I am the "FBI sniper" referenced on page 4, footnote 2, of that filing.

7. From on or about January 10 to January 14, 2020, I reviewed and opined on certain material provided by the assigned Assistant United States Attorney. I have reviewed the Government's Memorandum in Aid of Sentencing (ECF No. 104). I am the "FBI sniper" referenced in that filing, primarily on pages 13 through 18. Each statement attributed to me in that filing accurately reflects my beliefs, based on my training, experience, and knowledge of the reviewed material.

8. The distinction between a precision rifle and a sniper rifle is vague and somewhat nuanced. Many rifles used by snipers in military and law enforcement continue to be marketed and sold to civilians as hunting or precision rifles. For example, the Remington 700 model was sold on the civilian market as a large game rifle prior to its adoption by the military, and the HS Precision was marketed as a varmint rifle (a precision rifle accurate enough to hit small game at long distances) prior to its adoption by the FBI. In addition, modifications and enhancements may be made after purchase by owners or gunsmiths to accommodate their use in sniper-specific roles. Most precision rifles are designed with the purpose of placing an appropriate caliber bullet to an intended target with enough velocity to penetrate animals, regardless of the classification of the

animal (e.g., deer, bear, or human). Thus, the rifle referenced in the Government's Memorandum in Aid of Sentencing (ECF No. 104), the Bergara in .308 caliber, can be used to precisely target large animals including human beings from long distances, particularly with the addition of a scope to enable precision sighting at distance and a bipod to stabilize the rifle while shooting. Furthermore, the caliber of the rifle, .308, is one of the most commonly used calibers of rifle employed by U.S. military and especially law enforcement snipers both for its accuracy as well as its terminal effectiveness in the body.

9. Consistent with 18 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on January 27, 2020.

Special Agent
Federal Bureau of Investigation

# **<u>EXHIBIT A</u>**



