# OFFICE OF THE FEDERAL PUBLIC DEFENDER
## DISTRICT OF MARYLAND
NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-0872

JAMES WYDA  
FEDERAL PUBLIC DEFENDER

ELIZABETH G. OYER  
SENIOR LITIGATION COUNSEL

January 29, 2019

Via ECF Filing  
Honorable George J. Hazel  
United States District Judge  
U.S. District Court for the District of Maryland  
6500 Cherrywood Lane  
Greenbelt, Maryland 20770

Re:   *United States v. Christopher Hasson*, Criminal Case No. 19-cr-0096-GJH

Dear Judge Hazel:

We are writing to supplement our response to the government's sentencing memorandum (Dkt. No. 104), filed on January 17, in light of (1) a significant additional discovery production that we received from the government just this week, and (2) new allegations and information in the government's most recent filing (Dkt. No. 112, filed January 27).

### *Newly Disclosed Discovery*

Over nine months ago, on April 8, 2019, we requested in writing that the government produce the complete contents of Mr. Hasson's U.S. Coast Guard computer, including his complete internet use history. The government ostensibly complied with our request, producing what was represented to be responsive to our request on April 12, 2019.  Since that time, and until several days ago, we were operating under the assumption that the file we received was in fact complete.

It came to our attention only days ago, in preparing our response to the government's sentencing memorandum, that the data produced on April 12, 2019, was in fact substantially incomplete.  This came to our attention when we noticed that certain search terms discussed in the government's sentencing memo were not present in the internet history file produced to us in April. We brought this to the government's attention as soon as we discovered it, on Thursday, January 23.  The government eventually provided us with the complete data (which the government has had access to throughout the entire duration of this case) the evening of Monday, January 27.

The Hon. George J. Hazel
United States v. Christopher Paul Hasson, Crim. No. GJH-19-0096
January 29, 2019
Page 2

The newly produced files reflect a tremendously large volume of data.[1] We have not yet had time to comprehensively review the data to determine the full nature and extent of the omissions from the original production and likely will not be able to do so before sentencing, in light of the enormous size. Further complicating matters, the materials have been produced in a format that is not easily reviewable or searchable.

Nevertheless, a targeted preliminary review reveals the omission of information that is material to our defense arguments and directly contrary to the government's theory that Mr. Hasson was preparing a terrorist attack. For example, we have uncovered a series of additional searches and browsing activity that indicate that Mr. Hasson was pursuing competition shooting—*not* sniper training—when he purchased and used the Bergara Hunting and Match Rifle. The newly produced data shows that Mr. Hasson first viewed the Bergara B-14 HMR rifle (which he eventually purchased on December 30, 2017) on December 11, 2017. The very same day, and within just a few hours, he started researching competitive shooting, viewing pages related to "getting started in competitive shooting" and researching membership information for the Quantico Shooting Club. This search information, extracted from the January 27, 2020 production, is included in Exhibit 14, attached. All of this corroborates our prior explanation that Mr. Hasson purchased the Bergara HMR rifle for match shooting, *not* for sniper training.

We respectfully submit that this major discovery omission reflects a broader problem with the approach that the government has taken here. Had Mr. Hasson actually been indicted and tried for alleged terrorism, the government would not be so free to loosely and selectively use and share data. At trial, the internet search history, which underpins many of the government's most serious allegations against Mr. Hasson, would have to be offered through expert testimony, authenticating the source and method of data extraction. This sort of critical foundational testimony would offer the defense a fair opportunity to test the completeness and accuracy of the data, and would allow the Court as well as the defense to view the complete context surrounding the government's selections of evidence. The absence of these procedural safeguards here highlights the overarching unfairness of the government's effort to sentence Mr. Hasson as a domestic terrorist, without ever putting him on trial for any such crime.

We urge the Court to view cautiously the evidence that the government has patched together in support of its theory that Mr. Hasson is a domestic terrorist. The methodology the government has employed is opaque, at best. This discovery failure highlights the problems inherent in skipping over the charging and trial procedures spelled out in the Constitution and the Federal Rules and proceeding straight to sentencing on such serious allegations. The allegations

---

[1] An initial inspection by our in-house IT administrator indicates that the new production includes over 2,400 separate data files, containing a total of approximately 78,000 entries. It appears that approximately 30,000 of these entries were omitted from the original production, although we are uncertain of the precise number.

The Hon. George J. Hazel
United States v. Christopher Paul Hasson, Crim. No. GJH-19-0096
January 29, 2019
Page 3

here are the product of the government's selective piecing-together of evidence, in a way that misleadingly distorts the true factual context.

### *Additional Information About Mr. Hasson's Firearms History*

In its response to our response to its sentencing memo (Dkt. No. 112), filed on January 27, the government provides additional information pertaining to the Bergara .308 caliber rifle that the government alleges Mr. Hasson purchased to become a sniper, digging into its theory that Mr. Hasson purchased this gun for an unlawful purpose.

We reiterate that this allegation is false. According to numerous witnesses interviewed by the defense (at least some of whom have been interviewed by the government, as well), Mr. Hasson has bought, sold, and owned guns throughout his entire adult life. This includes .308 caliber rifles (like the Bergara), as well as numerous AR-15s, and all manner of handguns, shotguns, and rifles.

We have not been able to recreate Mr. Hasson's firearms ownership history in full (and, frankly, did not deem it necessary to try to do so until we reviewed the government's sentencing submissions). However, in light of the fact that the government is apparently challenging a fact known to all who know Mr. Hasson—that he is a lifelong enthusiastic recreational gun owner and trader—we wish to provide the Court with additional records and information that we have collected.

Attached as Exhibit 15 are records from Calguns.net, a site for buying, selling, trading, and discussing firearms. Mr. Hasson was a regular user of that site while he lived in California. He joined the site in February 2008, posted at least 77 times between 2008 and 2011, and bought and sold numerous guns, including but not limited to a .308 caliber rifle, an AR-15 rifle, and assorted handguns. Mr. Hasson posted under his familiar username "zx10razor." He posted in search of a .308 caliber rifle on November 19, 2010 and again on November 26, 2010. He posted in search of an AR-15 rifle on November 20, 2010, and he posted an AR-15 rifle for sale on January 19, 2011. The excerpts at Exhibit 15 are not complete or comprehensive, but provide at least some insight into Mr. Hasson's gun ownership history and trading habits.[2]

Attached as Exhibit 16 are records from Virginia Gun Trader, another site for buying, selling, trading, and discussing firearms. Mr. Hasson used that site after he left California and moved back East. Mr. Hasson registered for the site with the username "razorarrow." We were not able to obtain records for the individual transactions in which Mr. Hasson engaged using Virginia Gun Trader. However, the available profile information shows that Mr. Hasson registered for that site in December 2012 (when he was living with his father-in-law in Virginia), posted on the site 93 times, and bought and sold guns at least as early as 2013, always receiving positive reviews from other users.

---

[2] The posts by Mr. Hasson are highlighted with red boxes around them to aid review.

The Hon. George J. Hazel
<u>United States v. Christopher Paul Hasson</u>, Crim. No. GJH-19-0096
January 29, 2019
Page 4

Mr. Hasson sold a large portion of his previous firearms collection in early 2013, in order to come up with the cash for closing costs on the home he bought (and still owns) with his wife in Currituck, North Carolina. Records show that the closing on that home took place on April 19, 2013. *See* <u>Exhibit 17</u> (page 2). This corresponds closely in time with his registration for the Virginia Gun Trader site on December 25, 2012, and the firearms transaction reviewed on March 20, 2013, by another user of the site. *See* <u>Exhibit 16</u> (bottom of page 2).

The Hassons struggled financially for several years after their purchase of the Currituck house, which was the first time they had owned a home. However, Mr. Hasson received a large raise in 2016, when he was promoted to Lieutenant, as well as a substantial increase in his Basic Allowance Housing when he moved to the D.C. area. When Mr. Hasson's daughter left home and his wife joined him in D.C. in 2017, the Hassons were able to start renting out their house in Currituck. As a result of all of these factors, Mr. Hasson's disposable income increased substantially in 2017. He was, at that point, able to begin replacing the firearms that he had to sell in 2013 and start rebuilding his collection. The government's evidence shows that Mr. Hasson bought three guns (two handguns and the Bergara rifle) in 2017. *See* Dkt. No. 104, at 38-39.

This information is corroborated by interviews with friends and family members conducted by the defense. Moreover, the government informed us today, after we expressly requested this information, that a fellow service member of Mr. Hasson's contacted the Coast Guard Investigative Service in February 2019 and advised "that he transferred a black Marlin .22 rifle to the defendant while they were stationed together in Petaluma, California, approximately 10 or 11 years ago." That rifle was among the firearms seized from Mr. Hasson's residence when he was arrested.[3]

In addition, the government acknowledges in its sentencing memo that at least two more of the guns seized from Mr. Hasson's home (an AR-15 rifle and a Remington shotgun) were purchased 10 years prior to his arrest, in 2009, when he was living in California. Thus, even the government's own evidence shows that Mr. Hasson acquired *at least* three firearms in or around 2009 alone. Buying three firearms in 2017, when he had the money to do so, is therefore demonstrably consistent with his longstanding history.

We urge the Court to consider Mr. Hasson's firearms purchases in the context of his life history and put to rest the false assertion that Mr. Hasson was arming himself for an attack.

---

[3] The date of acquisition of this rifle is described as unascertainable in the government's sentencing memo. *See* Dkt. No. 104, at 38 n.25. Again, this highlights the selective and strategic use of information by the government here.

The Hon. George J. Hazel
<u>United States v. Christopher Paul Hasson</u>, Crim. No. GJH-19-0096
January 29, 2019
Page 5

### *Conclusion*

     For these reasons, together with the reasons set forth in our previous briefing, we urge the Court to set aside the collateral allegations of domestic terrorism and sentence Mr. Hasson based only on the crimes of conviction.

                      Respectfully submitted,

                              /s/

                      Elizabeth G. Oyer
                      Cullen Macbeth

EGO:sdf
cc:  Thomas Windom, AUSA (via ECF)
      Jennifer Sykes, AUSA (via ECF)