# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GJH-19-96 |
| | * | |
| CHRISTOPHER PAUL HASSON, | * | |
| | * | |
| Defendant | * | |
| | * | |

\*\*\*\*\*\*\*\*

## GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE LETTER

Earlier tonight, on January 29, 2020, the defense filed a letter with the Court making discovery claims, raising new facts, and introducing additional exhibits. ECF No. 116. The Government intends to respond fully at the sentencing hearing on January 31, 2020, but takes this opportunity to briefly respond now.

### Internet History

The Government has produced voluminous data to the defendant since the inception of this case, including a substantial quantity of information regarding the defendant's internet history and general usage of his work computer. Below is an abbreviated timeline of the productions relevant to the defendant's latest filing.

In a letter dated April 8, 2019, the defendant requested from the Government, among other things, "[a]ny and all internet search history and internet browsing history" "from the computer used by Mr. Hasson during his employment with the U.S. Coast Guard." In a discovery production dated April 12, 2019, the Government acknowledged receipt of the defendant's request, stated that "[s]ome of the materials you requested are included in this production," and also stated that the Government would respond more completely to the requests in a separate letter. In the April 12 production, the Government produced certain internet history from the defendant's work

computer, among many other items produced from the defendant's work computer.

Separately, in a discovery production dated April 25, 2019, the Government produced information obtained from Google pursuant to a search warrant, including the "MyActivity.html" file that includes the defendant's internet search history linked to his Google account. And in another discovery production dated June 26, 2019, the Government produced a comprehensive report of the defendant's usage of his work computer produced by the Coast Guard Insider Threat Program that "represents a full chronology of possible terrorism planning related to SUBJECT's activity observed and identified by Insider Threat Division."[1] The report includes, among many other things, reference to the defendant's internet searches on January 22, 2018, including one in particular regarding trigonometry.

In a letter dated August 16, 2019, the Government formally responded to a number of defense requests, including the request for Coast Guard computer "internet search history and internet browsing history," and informed the defendant that "[w]e believe these discovery requests are broader than what the Government is required to produce." The Government pointed out that nonetheless certain material responsive to the requests had been produced on April 12, 2019. The letter also informed the defendant that if "you believe our judgment is in error, we invite you to point us to specific instances where we have not produced requested information and the caselaw you believe requires us to produce that information." The Government did not receive a response.

On October 3, 2019, the defendant pleaded guilty to the counts in the superseding indictment. In compliance with the sentencing order, the parties filed opening memoranda on or

---

[1] A version of this report has been filed as **Exhibit 19** to the Government's Memorandum in Aid of Sentencing.

before January 17, 2020, and responsive memoranda on January 24, 2020.[2]

On the evening of Thursday, January 23, 2020, the defendant informed the Government that he was unable to find in the Coast Guard work computer internet history all of the searches referenced in the Government's sentencing memorandum, including the one in particular from January 22, 2018, regarding trigonometry—the same search that was provided to the defendant on June 26, 2019, in the Coast Guard report on his work computer usage. The defendant asked the Government to produce the complete internet history. Thereafter, the Government coordinated with Coast Guard Investigative Service ("CGIS") and the Coast Guard Insider Threat Program. On Saturday, January 25, 2020, the Government informed the defendant that the April 2019 production included the full internet search/browser history to which CGIS had access, but that the Coast Guard Insider Threat Program had an expanded capability,[3] which the Government could obtain and produce on Monday, January 27, 2020. The Government did in fact obtain and produce the Insider Threat Program's information on Monday, January 27, 2020.[4]

Late on Wednesday, January 29, 2020, the defendant filed his letter with the Court. ECF No. 116. In the letter, the defendant says that he uncovered certain searches (which, to be clear,

---

[2] On January 27, 2020, the Government also filed an affidavit in response to the defendant's response memorandum. ECF No. 115-51.

[3] The Government has since learned that the expanded capability is a function of two things. First, the defendant obtained a new work computer on or about January 29, 2018, and the prior computer was no longer present on the network at the time of the CGIS pulls. Second, the Insider Threat Program uses an active audit system that pulls different, though overlapping, information than the tools to which CGIS has access, and extended farther back in time to before the defendant obtained the new computer in January 2018.

[4] The Government also pointed the defendant to two index files that aggregate the information in the many other files in the production. *See* ECF No. 116 at n.1 (discussing 2,400 separate data files).

he himself performed) that support his theory of why he bought the Bergara firearm in late 2017.[5] The defendant would have this Court focus on the defendant's limited searches regarding "match shooting," ECF No. 116 at 2,[6] rather than the comprehensive material put forth by the Government showing the defendant's real motives at this time (including his manifesto, Covington letter, targeting searches, etc.). The defendant's argument that he was just interested in participating in a sharpshooting competition at a gun club (of which he apparently was not a member) also makes no sense, in light of the sniper-related searches he conducted, including searching for the heights of a stop sign, a door, and a garage door—none of which are found on a sharpshooting course, and all of which are more suited to an urban sniper.

**Firearm Purchase History**

In his letter, the defendant also emphasizes something that is not in dispute: at various times in his life, the defendant has owned guns. ECF No. 116 at 3. Attached to his letter, the defendant appends screenshots purporting to document "Selected Hasson Firearms Trading Activity." *See* Defense Exhibits 15 and 16. This information was not produced by or to the Government, and the defendant clearly has had access to it for some time before the deadlines for filing the original and responsive sentencing memoranda.[7]

---

[5] The defendant also complains that he has "not yet had time to comprehensively review the data to determine the full nature and extent of the omissions from the original production and likely will not be able to do so before sentencing, in light of the enormous size." If the defendant truly believes mitigating information will be found in the data, he should seek a continuance.

[6] The defendant's internet search history linked to his Google account, obtained pursuant to a warrant and produced in June 2019, contained several searches related to the Quantico Shooting Club in December 2017 and January 2018, and a Bergara B14 HMR rifle in December 2017. It is unclear why the defendant did not discuss those searches in previous filings, if these searches were so momentous.

[7] Of note, the Virginia Gun Trader documents show that the defendant represented himself as living in Alexandria, Virginia. ECF No. 116-3. If any of the sales or purchases took place in Virginia, the defendant likely violated state and/or federal law in making the sale and traveling from Maryland to Virginia to do so. In fact, one of the positive online comments is dated October

The defendant then weaves these prior sales into a theory that "Mr. Hasson's disposable income increased substantially in 2017. He was, at that point, able to begin replacing the firearms that he had to sell in 2013 and start rebuilding his collection." ECF No. 116 at 4. There is no basis for this argument. During its investigation, the Government obtained many financial records for the defendant. While the Government cannot attest to having the defendant's complete financial picture, the bank account and credit card statements obtained by the Government show that the defendant was in poor financial health at the time he purchased the Bergara rifle on December 30, 2017. As shown in the documents appended as sealed **Exhibit 50**, the defendant had roughly $2,850 combined in all of his bank accounts, and owed more than $33,300 on his combined credit cards.[8] In addition, the defendant appears to have opened an HSBC credit card account for the purpose of purchasing the Bergara. The defendant opened that account on December 18, 2017, and a few days later on December 30, 2017, purchased the Bergara (in an illegal firearm transaction while lying on ATF Form 4473, *see* **Exhibit 18**) for $1,049. *See* **Exhibit 50** at 2-13. The defendant thereafter made minimal or no monthly payments on the credit card until paying off the full balance in November 2018. *See* **Exhibit 50** at 14-15. Thus, there is no evidence to support the defendant's contention that an imaginary windfall led him to repurchase firearms that financial woes forced him to sell years before.[9] Nor, even if the defendant's arguments were accurate, would his interests in collecting guns or shooting in competition be mutually exclusive from the criminal conduct the

---

9, 2017, *see* ECF No. 116-3 at 2, the same date the defendant illegally purchased a firearm in Virginia. *See* **Exhibit 34**.

[8] This debt is on top of the substantial mortgage debt from his underwater North Carolina residence, as identified in the PSR. ECF No. 98 at 14.

[9] The defendant attempts to create an issue about the timing of his firearm purchases. ECF No. 116 at 4. These dates are not in real dispute. Many dates of the purchases are expressly written into the defendant's plea agreement. *See* ECF No. 94-1 at 3.

Government has proven he intended to carry out.

Respectfully submitted,

Robert K. Hur
United States Attorney

/s/
Thomas P. Windom
Assistant United States Attorney
